VOLNEY V. ASHFORD v. HENRY F. POOR and the
HAWAIIAN GOVERNMENT.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED DEC. 23, 1896.          DECIDED FEBRUARY 2, 1897.

JUDD, C.J., FREAR, J., AND S. M BALLOU, ESQ., OF THE BAR, IN
PLACE OF WHITING, J., DISQUALIFIED.

The Hawaiian Government is not liable for the appointment by the
    Postmaster General of a clerk in the Postal Savings Bank to make
    deposits as trustee for the plaintiff, such an appointment not being
    within the real or apparent scope of the Postmaster General's offi-
    cial duties, and having been ratified by the plaintiff.

The Hawaiian Government is not liable for the defalcation of a clerk
    in the Postal Savings Bank, who as trustee for the plaintiff
    makes a regular withdrawal of money, and fails to account there-
    for to the plaintiff.

OPINION OF THE COURT BY S. M. BALLOU, ESQ.

This case comes up on appeal from a decree of Circuit Judge
Carter in equity dismissing the plaintiff's bill. The Circuit
Judge found the facts in this case to be substantially as testified
in the plaintiff's deposition, as follows:

About the last week of December, 1888, just before leaving
Honolulu for Hilo, plaintiff handed a sack containing two thou-
sand nine hundred and twenty dollars to Fred. Wundenberg,
the Postmaster-General and ex-officio manager of the Hawai-
ian Postal Savings Bank; that at the time plaintiff had no
definite idea of having it deposited in the bank, but thought
more of its safety during his then intended absence from Ho-

nolulu and knew the post-office safes to be more secure than his own; that after his return from Hilo in the first week in January, 1889, he learned from Fred. Wundenberg that the money had been deposited in the bank in the name of H. F. Poor as trustee for him by Wundenberg's direction; that he had no objection to Poor acting as his trustee, and that he regarded Poor merely in the light of an official in the bank and the Government; that on or about March 11 or 13, 1889, he stated to Poor that he desired to withdraw four hundred and twenty dollars with interest to that date, as the said amount was not drawing interest—the limit of interest-bearing deposits being two thousand five hundred dollars—and Poor accordingly took a blank withdrawal receipt and endorsed on the back thereof a form of receipt from plaintiff to Poor, which plaintiff at his request signed, acknowledging the receipt of "the within mentioned sum," and that Poor then handed to him four hundred and forty dollars, twenty dollars being accrued interest; that Poor thereafter filled the receipt in with the sum of two thousand nine hundred and forty dollars, being the amount to the credit of the account, and appropriated the difference.

Upon this state of facts the plaintiff prays that the defendant Poor may be commanded, as trustee, to draw a check on the bank for the money in question, and that the Hawaiian Government, in default of the payment of such check, be ordered to pay the amount of the deposit, with interest, to the plaintiff.

Although at this time the Hawaiian Government was by statute liable for the torts of its agents (see *High v. Hawaiian Gov't*, 8 Haw. 546; *Dillingham v. Government*, 9 Haw. 101), its liability in this case cannot be conceded. Counsel for the plaintiff contends that the government is liable both for the appointment of Poor as trustee for the plaintiff by Postmaster-General Wundenberg, and for the subsequent defalcation by Poor while clerk of the Postal Savings Bank.

Wundenberg's appointment of Poor as trustee was not an act done within the real or apparent scope of his official duties.

It does not fall within the spirit nor the letter of the statute then in force (Acts 1884, Ch. 46, Sec. 2) which made it "lawful for the Postmaster-General to authorize and direct such of his officers as he shall think fit to receive deposits and to repay the same." Poor was requested to make a deposit, not to receive it. The act was personal and private, and if any responsibility is attached to it on account of its remote consequence, the plaintiff, by ample acts of ratification, adopted it as his own.

It is equally clear that the government cannot be held liable for the subsequent defalcation of Poor. In withdrawing the money from the bank Poor was acting within the authority conferred on him by the plaintiff. The liability of the government was then terminated. The subsequent embezzlement of the fund was a matter solely between the plaintiff and his trustee, for which the government has no responsibility.

The point was made on the brief for the plaintiff that subsequently to this transaction, that is, on June 28, 1889, Poor reopened the account by a fictitious entry of $2,500, closing it again upon May 21, 1890, and that these entries created a liability on the part of the government. The post-office books, however, show that the entry of May 21, 1890, was prior in time, that is, $2,500 was drawn out against an account that had nothing to its credit, and that this was subsequently restored on June 28, 1890, not 1889. There can no liability arise out of this transaction.

The decree appealed from is affirmed.

*A. S. Hartwell,* for plaintiff.

*Dep. Attorney-General, E. P. Dole,* for Hawaiian Government.

*A. Rosa,* for defendant Poor.